# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAYLOR DUKE, *on behalf of herself and similarly situated employees*, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 2:20-865-CCW |
| HARVEST HOSPITALITIES, INC., and SATTAR SHAIK, | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ALEXIS WILSON, KAITLIN SHOEMAKER and GABRIELLE HAUZE, *on behalf of themselves and similarly situated employees*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:22-744-CCW |
| v. | ) ) | |
| HARVEST HOSPITALITIES, INC., SATTAR SHAIK, HARVEST 568 INC., HARVEST 3405 INC. and HARVEST 3614 INC., | ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| NICOLE ROYAL, BENJAMIN REEVE, JENNIFER RODRIGUEZ-LOPEZ, JUAN SANCHEZ, YORK ALVARADO, and GABRIELLE LAVALLE, *on behalf of themselves and similarly situated employees*, | ) ) ) ) ) ) | Civil Action No. 2:22-573-CCW |
| Plaintiffs, | ) ) | |
| v. | ) | |
| HARVEST HOSPITALITIES, INC., HARVEST 2017, INC., HARVEST 2051, INC., HARVEST 2085, INC., HARVEST 4694, and SATTAR SHAIK, | ) ) ) ) ) | |
| Defendants. | ) | |

| | |
|---|---|
| CLAUDIO MORALES, KYLE KAMMER, DWIGHT L. CLARKE, LAWRENCE C. SCOTT, JAMIE SUTTON, JASMINE COOLEY, MEGAN BOYER, *and* JESSICA JORDAN, *on behalf of themselves and similarly situated employees,*<br><br>Plaintiffs,<br><br>v.<br><br>HARVEST HOSPITALITIES, INC., SATTAR SHAIK, HARVEST ASSOCIATES INCORPORATED, HARVEST PASADENA, INC., HARVEST-GAMBRILLS, INC., HARVEST KENT ISLAND, INC., HARVEST SALISBURY, INC., HARVEST OCEAN CITY, INC., HARVEST ONLEY, INC., HARVEST MANASSAS MALL, INC., HARVEST MANASSAS, INC., HARVEST 493, INC., HARVEST 591, INC., and HARVEST 575, INC.,<br><br>Defendants. | Civil Action No. 2:22-772-CCW |

---

### Brief in Support of Plaintiffs' Unopposed Motion for
### <u>Preliminary Approval of Class Action Settlement</u>

Joseph H. Chivers
   jchivers@employmentrightsgroup.com
The Employment Rights Group LLC
First & Market Building
100 First Avenue, Suite 650
Pittsburgh, PA  15222
Tel.: (412) 227-0763

Jeffrey W. Chivers
   jwc@chivers.com
Theodore I. Rostow
   tir@chivers.com
Chivers LLP
300 Cadman Plaza West
12th Floor
Brooklyn, New York 11201
Tel.: (718) 210-9825

A class-action settlement agreement has been reached in this consolidated wage-and-hour action, and the Plaintiffs respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. As discussed herein, the proposed settlement warrants this Court's preliminary approval.

## I.    PROCEDURAL HISTORY

On June 12, 2020, Plaintiff Taylor Duke filed an individual-, class-, and collective-action complaint against Defendants Sattar Shaik and Harvest Hospitalities, Inc. (ECF No. 1.) On October 16, 2020, Plaintiffs filed an amended complaint, expanding the class and collective claims to include similarly situated employees in New Jersey and Maryland. ECF No. 47. On November 6, 2020, the parties stipulated to conditional certification of an FLSA collective encompassing "[a]ll hourly paid workers employed by IHOP within the Harvest Hospitalities franchise at any time from October 23, 2017, to the present." ECF No. 56. The Court granted the Parties motion, notice was distributed, and more than 290 employees opted into the lawsuit. *See* ECF No. 59; ECF No. 78.

Plaintiffs alleged that Defendants improperly modified the time records of the hourly employees and required them to work more hours than they were paid for. Defendants deny these allegations.

After the parties engaged in some discovery relating to the opt-in plaintiffs in the *Duke* action, Plaintiffs moved to narrow the *Duke* action to assert claims only on behalf of herself and the hourly employees working in Western Pennsylvania. By order dated September 17, 2021, the Court granted Plaintiffs motion and the opt-in Plaintiffs who worked for Defendants' restaurants outside of Western Pennsylvania were dismissed without prejudice. ECF No. 105; ECF No. 107; ECF No. 107-1; ECF No. 106 (Second Amended Complaint). The Parties completed discovery on January 18, 2022, after the Parties deposed more than 20 witnesses and completed expert

discovery.  *See* Declaration of Jeffrey W. Chivers ("JWC Decl.") ¶ 9.  The Court held a post-discovery status conference with the Parties on January 20, 2022.  ECF No. 121; ECF No. 124.  At the Parties request, the Court referred the Parties to a judicial settlement conference presided over by U.S. District Judge W. Scott Hardy.  ECF No. 125.

After conferring with Judge Hardy, the Parties agreed that the settlement conference would address not only the claims in the *Duke* action but also those claims asserted by former *Duke* opt-in Plaintiffs in three actions that were commenced after the *Duke* action had been narrowed to cover hourly employees in Western Pennsylvania.  The three actions had been commenced in the U.S. District Court for the Eastern District of Pennsylvania, the U.S. District Court for the District of New Jersey, and the U.S. District Court for the District of Maryland, and these cases were transferred to the Western District of Pennsylvania after the parties reached a settlement in principle.  Those actions involved similar claims alleged in the *Duke* action and sought back wages for the employees who worked for Harvest Hospitalities and Mr. Shaik in those jurisdictions.

The Parties participated in a judicial settlement conference on April 7, 2022, before Judge Hardy.  ECF No. 129.  Representative plaintiffs from each of the four actions participated in the conference on Plaintiffs' side of the discussion.  *See* JWC Decl. ¶ 11.  Though the Parties did not reach settlement during the judicial settlement conference, the parties made progress and, thereafter through further discussions and as a result of the judicial settlement conference, the parties reached an agreement in principle to settle the actions.  The Parties reached the settlement agreement only after Defendants provided substantial confidential financial information that showed a level of financial distress that significantly increased the anticipated risks for Plaintiffs to continue litigation against the Defendants.  *See* JWC Decl. ¶ 13.

The three cases were transferred to the Western District of Pennsylvania for purposes of settlement, and, on June 7, 2022, the Court consolidated the four actions into *Taylor Duke v. Harvest Hospitalities, Inc., Sattar Shaik,* Civil Action No 2:20-865.  ECF No. 140.

Plaintiffs and Defendants finalized a settlement agreement (the "Settlement Agreement") on June 28, 2022.  Plaintiffs now seek this Court's approval of that settlement.  The Settlement Agreement, with exhibits and schedules, is attached to Plaintiffs' Motion as Exhibit 1.

## II.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

The Settlement Agreement defines the Rule 23 Class Members as all hourly employees who were employed by Defendants Harvest Hospitalities and Sattar Shaik in Defendants' restaurants in Pennsylvania, New Jersey, Maryland, and Virginia through and including January 17, 2021.  (*See* Settlement Agreement ¶¶ 1.9-1.13.)  There are 3,564 Rule 23 Class Members, and they are identified by unique identifying number, along with the stores where they worked and the number of workweeks they worked in the covered time period, in Schedules A through D to the Settlement Agreement.  (*See* Settlement Agreement, Schedules A through D.)

The Settlement Agreement defines the Settlement Class Members as Rule 23 Class Members who submit claim forms pursuant to Paragraph 4.2(b) of the Settlement Agreement.  The Parties stipulate and agree that, for settlement purposes only, the requisites for providing for a fair and reasonable resolution of the claims alleged in the operative complaints in the four actions under the FLSA, the Pennsylvania Minimum Wage Act ("PMWA") and Pennsylvania Wage Payment Collection Law ("WPCL") (applicable to the Pennsylvania Rule 23 Class only), the New Jersey State Wage and Hour Law and the New Jersey Wage Payment Law (applicable to the New Jersey Rule 23 action), the Maryland Wage and Hour Law ("MWHL") and Maryland Wage Payment Collection Law (applicable to the Maryland Rule 23 Class only), the Virginia Minimum

Wage Act ("VMWA") and Virginia Wage Payment Act ("VWPA") (applicable to the Virginia Rule 23 Class only), and the requisites for a class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for the Rule 23 Class Members, are met.

### B.    Distribution of the Gross Settlement Amount and Release of Claims

The Maximum Gross Settlement Amount under the Agreement is $965,000.  The Parties have agreed that, in light of Defendants' financial condition stemming in large part from the ongoing Covid-19 pandemic, Defendants shall be obligated to make its payments under the Settlement Agreement in two installments.  Pursuant to the Settlement Agreement, no later than seven (7) days following the Effective Date, the Settlement Administrator shall provide a report to Proposed Class Counsel and Defense Counsel stating the total amount of funds (not exceeding the Maximum Gross Settlement Amount) required to satisfy all payment obligations pursuant to the Settlement Agreement, as well as the allocation of those funds.  Settlement Agreement. (Agreement ¶ 5.1.)  Within fourteen (14) days of the date the report is provided by the Settlement Administrator, Defendant shall remit the first installment payment to the Settlement Administrator, which shall be in the amount of five hundred thousand dollars ($500,000), to be held in escrow by the Settlement Administrator for the purpose of making payments in accordance with the Agreement and the Final Approval Order.  (Agreement ¶ 5.2.)  Within seven (7) days after the Settlement Administrator receives the first installment payment from Defendant, the Settlement Administrator shall make the payments in accordance with the Agreement and the Final Approval Order.  (Agreement ¶¶ 5.3, 5.10(a).)

The second installment payment shall be in the amount of four hundred sixty-five thousand dollars ($465,000) and shall be remitted to the Settlement Administrator no later than June 30, 2024.  (Agreement ¶ 5.10(b).)  Within seven (7) days after the Settlement Administrator receives

the second installment payment, the Settlement Administrator shall make the payments in accordance with the Agreement and the Final Approval Order. (Agreement ¶¶ 5.3, 5.10(b).)

Under the Settlement Agreement, Rule 23 Class Members who do not timely exclude themselves from the Settlement are to be bound by the Release set forth in Paragraph 6.1 of the Settlement Agreement.  (Agreement ¶ 6.1.)  Rule 23 Class Members who exclude themselves from the Rule 23 Class by submitting request for exclusion during the Opt-Out Period will not be entitled to any payment from the settlement and they shall not be subject to any release in the Agreement. (Agreement ¶ 5.3.)

The Settlement Administrator will make the payments to Class Representatives and the Settlement Class Members by checks delivered via U.S. First Class Mail.  The front of each check shall include the following statement: "SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED."  The back of each check shall include the following statement above the endorsement: "By endorsing this check, I confirm I am a class member in [name of applicable lawsuit] and consent to be bound by the settlement agreement and release in that matter." (Agreement ¶ 5.3 (a).)

Class Representatives and the Settlement Class will have one hundred eighty (180) days from the date the checks are issued to negotiate them.  After one hundred eighty (180) days, the Settlement Administrator shall stop payments on any checks issued to Class Representatives and the Settlement Class Members that have not been negotiated.  Funds associated with checks that are not negotiated by the expiration date will revert back to Defendant Shaik, and the Settlement Administrator will issue any corrected tax reporting as needed. (Agreement ¶ 5.7.)  Within seven (7) days after the Settlement Administrator receives the first installment payment from Defendant Shaik, subject to this Court's approval, the Settlement Administrator would also transfer the first

5

installment of Attorneys' Fees and Expenses Payment to Proposed Class Counsel and the first installment of Enhancement Payments to Named Plaintiffs and Deponents. (Agreement ¶¶ 5.3(b), 5.4, 5.10(a).) Within seven (7) days after the Settlement Administrator receives the second installment payment from Defendant Shaik, subject to this Court's approval, the Settlement Administrator would also transfer the second installment of Attorneys' Fees and Expenses Payment to Proposed Class Counsel and the second installment of Enhancement Payments to Named Plaintiffs and Deponents. (Agreement ¶¶ 5.3(b), 5.4, 5.10(b).)

The Agreement provides for a Maximum Gross Settlement Amount of Nine Hundred Sixty-Five Thousand ($965,000.00), which includes enhancement payments totaling $30,000, as well as a maximum of $260,000 for attorneys' fees and $76,000 for litigation costs incurred, and a maximum cost of $44,765.00 for the Settlement Administrator.

Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Settlement Payment Allocation—*i.e.*, the payments to Settlement Class Members—would equal in the aggregate five hundred fifty-four thousand, two hundred thirty-five ($554,235), which shall be distributed among the Authorized Claimants.[1] (Agreement ¶ 1.24(c).) The amounts calculated to be owed and to be paid to each of the Settlement Class Members who submits a Claim Form will be calculated based on each Authorized Claimants' workweeks worked, as set forth in the Settlement Agreement. (Agreement ¶ 3.1) The applicable workweeks were calculated by Proposed Class Counsel based on Defendants' time records and case investigation, and the workweeks for each of the Rule 23 Class Members are set forth in Schedules A through D to the

---

[1] Authorized Claimants are defined in the Settlement Agreement to mean "any Rule 23 Class Member who is entitled to a Settlement Payment, either because he or she timely submits the required Claim Form, as described herein, or because he or she is a Named Plaintiff or an Opt-In Plaintiff." (Agreement ¶ 1.2.)

Settlement Agreement.  Proposed Class Counsel will file a separate Motion for Approval of Attorneys' Fees and Costs at least fourteen (14) days before the deadline to object to or opt out of the Settlement.

### C.    Notice to Potential Settlement Class Members

The Settlement Agreement provides what Plaintiffs believe is the fairest and most practicable procedure for notifying Settlement Class Members of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement:  direct mail, e-mail (where available), and text message (where available).  Under the terms of the Settlement Agreement, not later than fourteen (14) days after the date of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with a spreadsheet listing the names, last known e-mail addresses (if available), last known phone numbers (where available), and last known mail addresses of the Rule 23 Class Members.  Agreement at ¶ 4.2(a).  Within fourteen (14) days after receiving the foregoing information from Defendant (or as soon thereafter as practicable), the Settlement Administrator shall e-mail (where e-mail addresses are available), text (where phone numbers are available), and mail, via U.S. First Class Mail, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") in the form attached as Exhibit F to the Settlement Agreement to all Rule 23 Class Members using each individual's last known e-mail address (if available), last known phone number (if available), and physical address (except that the Settlement Administrator shall perform a national change of address database review prior to mailing).  If a Notice is returned to the Settlement Administrator with a forwarding address, the Notice shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail to the address indicated.  If a Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts (such as skip traces) to search for the correct address, and shall

promptly re-mail the Settlement Notice to any newly found address(es). (Agreement at ¶ 4.2(b).) For the email and text message distribution, the Settlement Administrator will send the email and text message notices attached as Exhibits B and C, respectively, to the Settlement Agreement.

Any Rule 23 Class Member who does not wish to become a Settlement Class Member may request exclusion from the class by submitting a signed request for exclusion to the Settlement Administrator. To be effective, such request for exclusion must include the individual's name and an unequivocal statement that the individual requests to be excluded from the class, and it must be received by the Settlement Administrator within sixty (60) days following the date of the initial mailing of the Rule 23 Notice Packet (the "Opt-Out Period"). The Settlement Administrator shall deliver copies of each request for exclusion to Proposed Class Counsel and Defense Counsel not later than five (5) business days after receipt thereof. Proposed Class Counsel shall, within ten (10) business days of the end of the Opt-Out Period, file with the Court copies of all requests for exclusion so received.

## III.   DISCUSSION

Plaintiffs respectfully request that the Court enter the accompanying proposed order preliminarily approving the class settlement reached in this matter. Defendants do not oppose this motion.

### A.   Applicable Legal Standards

#### 1.   Legal Standard for Preliminary Approval of Rule 23 Class Action Settlements

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. This judicial approval process entails three steps: (1) the Court decides whether to "preliminarily approve" the settlement; (2) if the settlement is preliminarily approved, notice is issued to class members so they can decide whether to object to

or exclude themselves from the proposed settlement; and (3) after the notice period has expired,

the Court conducts a fairness hearing and makes a final approval decision. *See Hill v. Udren Law*

*Offices, P.C.*, 2020 WL 6785537, 2020 U.S. Dist. LEXIS 215635, *13-14 (W.D. Pa. Nov. 18,

2020); *Manual for Complex Litigation, Fourth*, at §21.63 (Federal Judicial Center 2008).[2]

At the preliminary approval stage, Rule 23(e)(1) provides the governing standard:

(e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) Notice to the Class.

(A) Information That Parties Must Provide to the Court. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B) Grounds for a Decision to Give Notice. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

---

[2] This is a "hybrid" action in which the state law claims are pursued as Rule 23 class actions, while the FLSA claims are asserted on a collective-action basis under 29 U.S.C. § 216(b). Pennsylvania district courts generally review FLSA settlements to ensure that they represent "'a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Adams v. Bayview Asset Management, LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014); *accord Tumpa v. IOC-PA, LLC*, 2021 WL 62144, 2021 U.S. Dist. LEXIS 2806, *11-12 (W.D. Pa. Jan. 7, 2021); *Herbin v. PNC Financial Services Group, Inc.*, 2020 WL 429081, 2020 U.S. Dist. LEXIS 13095, *2 (W.D. Pa. Jan. 27, 2020). Yet, FLSA collective actions are different from Rule 23 class actions in several respects. *See generally Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 222-27 (3d Cir. 2016). Most importantly for purposes if the instant motion, Rule 23's preliminary approval and notice protocols do not apply to FLSA collective settlements. *See Herbin*, 2020 U.S. Dist. LEXIS 13095, at *2 n. 2; *accord Haskett v. Uber Technologies, Inc.*, 780 Fed. Appx. 25, 27 (4th Cir. 2019) Thus, in settling "hybrid" PMWA/FLSA cases, class and collective counsel within the Third Circuit generally brief the fairness of the resolution of the FLSA claim at the "final approval" stage of the Rule 23 approval process. Pennsylvania district courts have endorsed such approach. *See, e.g., Del Valle v. Empire Home Health Care*, 2021 WL 5534703, 2021 U.S. Dist. LEXIS 153355, *1 n. 1 (E.D. Pa. Aug. 3, 2021) (observing that plaintiff "will request judgment on the FLSA collective action together with final approval of the PMWA class action"); *Tumpa*, 2021 U.S. Dist. LEXIS 2806, at *11-15 (performing FLSA fairness analysis at the final approval stage).

Fed. R. Civ. P. 23(e)(1); *see, e.g.*, *Hall v. Accolade, Inc.*, 2019 WL 3996621, 2019 U.S. Dist. LEXIS 143542, *4-5 (E.D. Pa. Aug. 23, 2019).

**B.**     **The Court Should Provisionally Certify the Rule 23 Settlement Class**

As noted above, Rule 23(e)(1)(B) establishes that, at the "preliminary approval" stage, a district court must address two questions: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)" and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Here, both requirements are satisfied.

**1.**     **The Court should find it "will likely be able to . . . approve the proposal under Rule 23(e)(2)."**

To determine whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)," the Court should look to Rule 23(e)(2)'s approval factors, *see* Fed. R. Civ. P. 23(e)(2)(A)–(D), and predict whether it is likely the Court will find the settlement agreement to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

**a.**     **Rule 23(e)(2)(A) – Adequacy of Proposed Class Counsel and Class Representatives**

The first factor is whether the class representatives and Proposed Class Counsel "have adequately represented the class." This factor focuses "on the actual performance of counsel acting on behalf of the class." *Hall*, 2019 U.S. Dist. LEXIS 143542, at *8-9 (internal quotations omitted); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (Proposed Class Counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims").

Here, this factor is likely to be satisfied. Prior to reaching settlement, Proposed Class Counsel completed discovery in the *Duke* action, conducted damages analyses in each of the other actions, and analyzed the pertinent issues related to class certification, liability, and damages. Proposed Class Counsel reviewed tens of thousands of Defendants' internal communications,

conducted more than 200 interviews of class members, assisted class members in responding to more than 200 sets of interrogatories, defended and took more than 20 depositions, scrutinized more than 2,000 pages of Defendants' financial statements and loan documentation, and expended more than $75,000 for court filings, deposition transcripts, and damages-expert fees.  *See* JWC Decl. ¶ 9.

The Class Representatives have also adequately represented the class.  They have dutifully pursued the Civil Actions for themselves and the other class members, including by providing substantial evidence and information to support the class claims, and the Named Plaintiffs do not have any interests that are antagonistic to the class.  *See* JWC Decl. ¶ 9.

### b.  Rule 23(e)(2)(B) – Negotiation at Arm's Length

The second factor is whether the settlement was "negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  This factor is presumptively satisfied where, as here, the parties reach settlement during negotiations overseen by a third-party mediator. *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *9-10.  The Parties participated in this Court's judicial mediation program, and participated in a full-day mediation session before Judge Hardy.  *See* ECF No. 125; *see also* JWC Decl. ¶ 11. Substantial progress was made during that judicial settlement conference, and, per Judge Hardy's recommendation, counsel for the Parties continued to exchange information, arguments, and settlement positions in the weeks after the settlement conference.  *See* JWC Decl. ¶ 11.  At all times Proposed Class Counsel maintained an arm's length posture vis-à-vis Defendants and defense counsel to negotiate a fair, adequate, and reasonable deal for the proposed class.  *See* JWC Decl. ¶ 13-14.

### c.      Rule 23(e)(2)(C) – Adequacy of Relief

The third factor is whether the relief provided to the class by the settlement "is adequate, taking into account" the sub-factors identified in Rule 23(e)(2)(C)(i)–(iv).

In weighing the adequacy of the relief, the Court must consider "the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C).  This factor "balances the relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigated outcome." *Hall*, 2019 U.S. Dist. LEXIS 143542, at *10 (internal quotation omitted).  Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."  *Id.* (internal quotation omitted). As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).

Here, this factor weighs strongly in favor of settlement approval.  Absent settlement, the Class Members risk several adverse outcomes as a result of the litigation.  First, they may receive an adverse finding that some or all of the manager time-card adjustments were made for a legitimate purpose, such as to correct when an employee forgot to clock out, as Defendants maintain.  Such a finding could substantially reduce, or even eliminate the potential recovery in this action.  Second, the class may receive an adverse finding with respect to off-the-clock work. Some of Defendants' managers testified they were not aware of any employees being required to work off the clock.  Third, the damages the class recovers, if they prevail on their claims, could be substantially lower than the damages they would seek at trial.  Fourth, the class could successfully litigate their claims through judgment and appeals only to be unable to recover any of the damages due to the substantial level of financial distress evidenced by Defendants' financial records.

12

Indeed, this final consideration should weigh heavily in favor of finding the settlement is adequate—the risk that a class-action judgment would push Defendants' into bankruptcy, leaving the class members behind Defendants' numerous secured creditors and potentially recovering nothing from such a bankruptcy, is significant. *See* JWC Decl. ¶ 13.

Moreover, Plaintiffs' counsel have estimated Defendants' outer exposure in the four cases to be $1,929,586 (unliquidated) for the various theories of liability asserted across the four actions, with favorable assumptions to the class. *See* JWC Decl. ¶ 10. Thus the $965,000 settlement represents 50.01% of the total liability for unpaid wages in this action, assuming that Plaintiffs succeed on all theories of liability.[3] Further, this percentage is based on assuming a theoretical exposure that includes substantial off-the-clock damages; to the extent Defendants' exposure were limited only to the measurable time reductions reflected in Defendants' time records (which Defendants maintain were made for legitimate reasons), the total damages exposure across all four cases is only $388,023.55 (unliquidated). The $965,000 recovery thus represents an excellent value when viewed against the pertinent litigation risks. *See, e.g.*, *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 144929, 2019 U.S. Dist. LEXIS 144929, *24-25 (E.D. Pa. Aug. 26, 2019) (approving settlement amount representing "between 20% and 39% of the maximum damages' calculations"); *Guice v. DIRECTV, LLC*, 2018 U.S. Dist. LEXIS 88585, *6 (E.D. Pa. May 24, 2018) (approving settlement that paid plaintiffs 26-41% of allegedly unpaid wages). Moreover, as stated above, this recovery is especially adequate given the significant risks the class face in continued litigation.

---

[3] In evaluating a settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees." *Solkoff v. Pennsylvania State University*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020); *accord Devine v. Northeast Treatment Centers, Inc.*, 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, *10 (E.D. Pa. Oct. 14, 2021).

Furthermore, continued litigation would require this Court to resolve Plaintiff Duke's anticipated class certification motion and Rule 37(e) sanctions motion, such that the *Duke* action would likely not be "trial ready" until sometime in 2023. As to the other three actions, discovery has not yet commenced, and each action has a Rule 12 motion pending. Settlement thus permits the Class Members to avoid substantial delays and risks to litigation.

In weighing the adequacy of the relief, the Court must also consider the "proposed method of distributing relief." Fed. R. Civ. P. 23(e)(2)(C)(ii). Under this sub-factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). The Court should find the procedures set forth in the Settlement Agreement are satisfactory. The Rule 23 Class Members have been identified based on Defendants' employment records, which strongly facilitates the filing of only legitimate claims. The sample one-page claim form, attached to the Settlement Agreement as Exhibit A, simply requires Rule 23 Class Members to sign and date the form and return the form in a timely manner. The one-page claim form, which will be provided by first-class mail, email (where email addresses are available), and text (where phone numbers are available) can be returned by mail, email, or completed online. *See* Ex. A to Settlement Agreement. Courts routinely recognize that such a claim form is not unduly burdensome. *See, e.g.*, *Spencer-Ruper v. Scientiae*, No. 8:19-cv-01709-DOC - ADS, 2021 U.S. Dist. LEXIS 204242, at *10 (C.D. Cal. Sep. 24, 2021); *Retina Assocs. Med. Grp. v. Alliancemed*, No. SACV 18-1670 JVS (KES), 2020 U.S. Dist. LEXIS 250855, at *13 (C.D. Cal. July 16, 2020).

In weighing the adequacy of the relief, the Court must also consider the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

This sub-factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes.  Here, the requested attorneys' fees will be paid in two installments, at the same time and in the same 50:50 ratio as the class member payments.  (*See* Agreement ¶¶ 5.10(a)–(b).)  Moreover, Plaintiffs' counsel anticipates that, after reductions and settlement administration expenses, the $260,000 in fees will represent around 26.9% of the 965,000 settlement fund.  Such a recovery falls well below the "one-third" fee awards that are common in wage and hour class actions. *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *12 (citing authority for proposition that "the average attorney's fees percentage in [surveyed class action] cases was 31.71% and that the median fee award was 33.3%); *Myers*, 2019 U.S. Dist. LEXIS 144929, at *29 ("the requested fee of one-third (1/3) of the settlement amount is reasonable in comparison to awards in other cases").  Before the final approval stage, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees under the Third Circuit's *Gunter* factors. *See, e.g., Tumpa*, 2021 WL 62144, 2021 U.S. Dist. LEXIS 2806, at *30-38. However, such detailed analysis is not necessary at the preliminary approval stage, *see, e.g., Hall*, 2019 U.S. Dist. LEXIS 143542, at *12.

In weighing the adequacy of the relief, the Court must also consider "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(iv).  Here, there are no other agreements made in connection with the Settlement Agreement.  *See* JWC Decl. ¶ 16.  This factor is thus either neutral or weighs in favor of approval of the settlement.

In weighing the adequacy of the relief, the Court must also consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(iv).  This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Fed. R. Civ. P. 23, Advisory Committee Notes to December 1, 2018 Amendments. Here, this factor is satisfied

15

because each Class Member's share of the settlement proceeds is based on his/her share of the total weeks worked.  *See* Agreement ¶ 3.1; JWC Decl. ¶ 15.

In sum, for the reasons set forth above, the Court should find it "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B)(i).[4]

### 2. The Court should find it "will likely be able to certify the class."

The Court should also find it "will likely be able to . . . certify the class" for purposes of settlement.  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Here, Plaintiffs ask the Court to certify the state-based settlement classes comprising the hourly employees identified in Schedules A (Pennsylvania), B (New Jersey), C (Maryland), and D (Virginia), each of whom was an hourly employee who worked for one or more of Defendants' IHOP restaurants in one or more workweeks in the covered timeframes.  *See* Agreement ¶¶ 1.9–1.13.

In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b).  *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015).  A case may be certified as a class action under Rule 23 when:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

---

[4] As indicated earlier, the settlement anticipates that the 34 Class Representatives will receive service awards.  The service awards are $7,800 for Taylor Duke, $1,000 for Alexis Wilson, $1,000 for Nicole Royal, $1,000 for Claudio Morales, $750 for each of the other named Plaintiffs in the four *Harvest* actions, and $500 for the nine opt-in Plaintiffs who were deposed in the *Duke* action.  These awards compare favorably to awards in other wage and hour actions.  *See, e.g., Hall v. Accolade, Inc.*, 2020 WL 1477688, 2020 U.S. Dist. LEXIS 52632, *25-26 (E.D. Pa. Mar. 25, 2020) (approving $10,000); *Cerini v. Monro, Inc.*, 2:20-cv-00867-RJC (ECF Nos. 60, 64) (approving $30,000 as an incentive award to named plaintiff and $42,500 in incentive awards to four opt-in Plaintiffs).  Regardless, courts generally defer assessments of service awards until the final approval stage.  *See Hall*, 2020 WL 1477688, 2020 U.S. Dist. LEXIS 52632, at *25-33.

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. In addition, a party must satisfy the requirements under Rule 23(b)(3), which permits the Court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Pursuant to Fed. R. Civ. P. 23(e)(1)(B)(ii), the Court may make a provisional determination as to whether an action is likely to be certified for purposes of judgment on a proposed settlement, subject to a final determination at a later date. The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997).

Plaintiffs move for preliminary certification of the Rule 23 Settlement Class under Fed. R. Civ. P. 23(b)(3), and request that the Court preliminarily find that all of the requirements for class certification are satisfied for settlement purposes only. Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 with respect to the Rule 23 Class Members have been and are met.

As discussed below, the Plaintiffs are likely to satisfy the six requirements for class certification pursuant to Rules 23(a) and 23(b)(3).

### a.      The Rule 23 Class Is Sufficiently Numerous

To meet the numerosity requirement, the class must be so numerous that joinder of all members is impracticable. Rule 23(a)(1)'s numerosity requirement is generally satisfied where,

as here, the class includes over 40 members. *See Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 490 & n.21 (E.D. Pa. 2018) (citing cases).  The proposed Settlement Class has more than 3,500 individuals and thus easily meets the numerosity requirement.

   **b.**  **The Rule 23 Class Seeks Resolution of Common Questions**

  The commonality "bar is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality "does not require perfect identity of questions of law or fact among all class members." *Reyes*, 802 F.3d at 486.  Since "'even a single common question will do,'" *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class,'" *id.* (quoting *Rodriguez*, 726 F.3d at 382).  The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the named plaintiff shares at least one question of fact or law with the grievances of the prospective class.  *Id.* at *20.

  Here, the commonality requirement is likely to be satisfied because all class members have common questions of fact and law, including the legal issue whether Defendant Shaik's control over the employees satisfied the requirements for joint employer and various factual issues concerning Defendants' timekeeping and payroll practices and the software systems (Delaget and Micros) that Defendants used for timekeeping and reporting daily revenue and costs (Deleget and WhatsApp) at each of the stores.

   **c.**  **The Claims of the Named Plaintiffs Are Typical of the Rule 23 Class**

  Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Rule 23(a)(3)'s typicality requirement "is intended to assess whether the action can be efficiently maintained as a class action and whether

the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal*, 43 F.3d at 57; *accord Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Lawsuits challenging the same conduct which "affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58. "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.*; *accord Stewart*, 275 F.3d at 227-28.

Here, typicality is likely to be found because the Named Plaintiffs and the Class Members pursue the same claims under their respective state laws and share the same interest of recovering unpaid wages based on Defendants' alleged failure to pay the amounts to which the employees were legally entitled for all hours worked by each employee.  The Named Plaintiffs' claims are typical of the claims of the Rule 23 Class.

### d. Proposed Class Counsel and Proposed Class Representatives Meet the Adequacy Requirements

This requirement is satisfied if both: "(a) the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff [does] not have interests antagonistic to those of the class." *Weiss v. York Hospital*, 745 F.2d 786, 811 (3d Cir. 1984) (internal quotations omitted).  Here, adequacy is likely to be satisfied.  Plaintiffs' counsel (Proposed Class Counsel) is skilled and experienced in wage and hour class action litigation.  *See generally* Declaration of Joseph H. Chivers, Declaration of Jeffrey W. Chivers, Declaration of Theodore I. Rostow.  Proposed Class Counsel has expended more than $75,000 in expenses and through their litigation efforts have persuaded the Defendants to enter into the Settlement Agreement, which provides a substantial recovery for the proposed Rule 23 Settlement Class.

Plaintiffs' counsel is adequate to represent the class.  The Named Plaintiffs are also likely to be found adequate, as they have dutifully pursued the Civil Actions for themselves and the other class members, including by providing substantial evidence and information to support the class claims, and the Named Plaintiffs do not have any interests that are antagonistic to the class.  *See* JWC Decl. ¶ 9.

### e.      The Rule 23 Settlement Class Satisfies the Predominance and Superiority Requirements

Finally, the court must examine whether "questions of law or fact common to the class predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### i.      Predominance

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). The Supreme Court has summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citations omitted).

Here, predominance is satisfied because, as discussed with respect to commonality above, the named Plaintiffs' pursuit of unpaid wages to which they are legally entitled is substantially based on a common evidentiary record, including (i) the evidence of time manager adjustments preserved through the Delaget backup system, (ii) the centralized management at Defendants'

stores, as evidenced through WhatsApp group messages and email records, (iii) testimony from Defendants' managers, (iv) representative testimony where Defendants' recordkeeping left an evidentiary gap.  Further, all Rule 23 Class Members were hourly employees and non-exempt under the FLSA and state law equivalents.  Thus the questions of "law or fact common to the members of the class predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3).

## ii.   Superiority

Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id.* at 315-16.  As discussed below, these factors favor class certification.

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims . . .  involve significant damages amounts.  *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at §4:69.  This is not such a lawsuit.  Like many wage and hour lawsuits, the per-person damages for the class members are relatively low compared to the expense of pursuing their claims individually.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. This factor is not relevant because no related litigation exists other than the four actions that would be resolved by this class action settlement.

21

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C).  Here, although the four actions were commenced in different forums because discovery in those actions, if the cases continued, would focus on the witnesses and stores in those forums, the concentration of all claims in this forum is nonetheless desirable given the Defendants' precarious financial position, the Named Plaintiffs' objective to obtain a settlement on behalf of all class members, and this Court's familiarity with the claims and defenses in the actions.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). This requirement is automatically satisfied when a case is certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In sum, as discussed above, the Court "will likely be able to . . . certify the class."  Fed. R. Civ. P. 23(e)(1)(B)(ii).

### 3.    The proposed notice satisfies Rule 23(c)(2)(B).

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Civil Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." *Id.* at 23(c)(2)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.* Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the

time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

Here, all the above requirements are satisfied. Rust Consulting, Inc., an experienced and respected third-party settlement administrator, will mail to each class member a package containing the notice form. (Settlement Agreement ¶ 4.2(b).)  If the post office returns any package with a forwarding address, Rust will promptly re-mail the package to the forwarding address.  (*Id.*) If the post office returns any package without a forwarding address, Rust will work diligently to obtain an updated address and will promptly mail the package to any updated address.  (*Id.*)  Rust will also provide notice by email and text where email addresses and phone numbers can be provided by Defendants' and/or Proposed Class Counsel.  (*Id.*)  Individuals will have 60 days from the preliminary approval date to file a claim form or exclude themselves from or object to the settlement.  (Settlement Agreement ¶ 4.2(b)-(e).)

Moreover, the notice form is written in clear language and accurately describes the nature of the action, the settlement, the scope of the release, and the process class members must follow to submit a claim form, exclude themselves from, or object to the settlement.  *See* Settlement Agreement, Exhibit F.  Importantly, each notice is individualized to provide the class member with his/her minimum settlement allocation and also states the number of qualifying workweeks on which each class members' settlement allocation would be based.  *See id.*

### C.     The Court should appoint the Employment Rights Group and Chivers LLP as interim Proposed Class Counsel

Where, as here, a class action lawsuit is settled prior to class certification, the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3).  Then, at the final approval stage,

these lawyers can seek to be appointed Proposed Class Counsel in conjunction with the certification of the settlement class. *See id.* at 23(g)(1).

Here, Plaintiffs' counsel respectfully ask the Court to appoint it as interim Proposed Class Counsel based on Plaintiffs' counsel's experience litigating class action lawsuits on behalf of workers. *See generally* Declaration of Jeffrey W. Chivers, Declaration of Joseph H. Chivers, Declaration of Theodore I. Rostow. Plaintiffs' counsel have been appointed class or collective counsel in many similar actions. *See ibid.*

### D.   Proposed Implementation Schedule

Pursuant to this Court's order that Plaintiffs' motion for preliminary approval of class action settlement "include proposed dates for the settlement review and approval process," ECF No. 138, Plaintiffs respectfully submit the following proposed schedule for notice and final approval of the Settlement Agreement, consistent with the Settlement Agreement. Plaintiffs respectfully request this Court approve the following schedule:

| | |
|---|---|
| Defendant to provide Proposed Class Counsel and Settlement Administrator with spreadsheet listing home address and email address (if available) of each Rule 23 Class Member | Within fourteen (14) days after the Court's Preliminary Approval Order |
| Mailing/Emailing of Class Notice | Within fourteen (14) days after Settlement Administrator receives contact information spreadsheet from Defendant |
| Deadline by which Class Member claim forms, requests for exclusion, or objections must be received by the Settlement Administrator | Sixty (60) days after Settlement Administrator mails Settlement Notice |
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and Enhancement Awards | At least fourteen (14) days before the deadline to object to or opt out of the Settlement |
| Plaintiffs' Motion for Final Approval | At least seven (7) days before the Fairness Hearing |
| Fairness Hearing | At the Court's convenience, not less than 100 days after the Court's Preliminary Approval Order. |

IV.     **CONCLUSION**

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this

Unopposed Motion for Preliminary Approval and sign the accompanying proposed preliminary

approval order.

Dated:   June 28, 2022
         Pittsburgh, PA

                                    By:     s/ Joseph H. Chivers

                                            Joseph H. Chivers
                                                jchivers@employmentrightsgroup.com
                                            The Employment Rights Group, LLC
                                            First & Market Building
                                            100 First Avenue, Suite 650
                                            Pittsburgh, PA  15222
                                            Tel.: (412) 227-0763
                                            Fax: (412) 774-1994

                                            Jeffrey W. Chivers, Esq.
                                                jwc@chivers.com
                                            Theodore I. Rostow, Esq.
                                                tir@chivers.com
                                            Chivers LLP
                                            300 Cadman Plaza West, 12th Floor
                                            Brooklyn, New York 11201
                                            Tel.: (718) 210-9825

                                            *Counsel for Plaintiffs*
                                            *and all others similarly situated*