IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAYLOR DUKE, *on behalf of herself and similarly situated employees*<br><br>  Plaintiff,<br><br>  v.<br><br>HARVEST HOSPITALITIES, INC., SATTAR SHAIK,<br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2:20-CV-00865-CCW |
| ALEXIS WILSON, KAITLIN SHOEMAKER and GABRIELLE HAUZE, *on behalf of themselves and similarly situated employees*,<br><br>  Plaintiffs,<br><br>  v.<br><br>HARVEST HOSPITALITIES, INC., SATTAR SHAIK, HARVEST 568 INC., HARVEST 3405 INC. and HARVEST 3614 INC.,<br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2:22- CV-00744-CCW |
| NICOLE ROYAL, BENJAMIN REEVE, JENNIFER RODRIGUEZ-LOPEZ, JUAN SANCHEZ, YORK ALVARADO, and GABRIELLE LAVALLE, *on behalf of themselves and similarly situated employees*,<br><br>  Plaintiffs,<br><br>  v.<br><br>HARVEST HOSPITALITIES, INC., HARVEST 2017, INC., HARVEST 2051, INC., HARVEST 2085, INC., HARVEST 4694, and SATTAR SHAIK,<br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 2:22-CV-00753-CCW |

| | |
|---|---|
| CLAUDIO MORALES, KYLE KAMMER, DWIGHT L. CLARKE, LAWRENCE C. SCOTT, JAMIE SUTTON, JASMINE COOLEY, MEGAN BOYER, *and* JESSICA JORDAN, *on behalf of themselves and similarly situated employees*, <br><br> Plaintiffs, <br><br> v. <br><br> HARVEST HOSPITALITIES, INC., SATTAR SHAIK, HARVEST ASSOCIATES INCORPORATED, HARVEST PASADENA, INC., HARVEST-GAMBRILLS, INC., HARVEST KENT ISLAND, INC., HARVEST SALISBURY, INC., HARVEST OCEAN CITY, INC., HARVEST ONLEY, INC., HARVEST MANASSAS MALL, INC., HARVEST MANASSAS, INC., HARVEST 493, INC., HARVEST 591, INC., and HARVEST 575, INC., <br><br> Defendants. | 2:22-CV-00772-CCW |

## **MEMORANDUM OPINION**

Before the Court is the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 144. For the reasons that follow, the Motion will be GRANTED.

### **I.**     **Background**

On June 12, 2020, Plaintiff Taylor Duke filed an individual-, class-, and collective-action complaint against Defendants Sattar Shaik and Harvest Hospitalities, Inc. alleging that Defendants improperly modified the time records of hourly employees and required hourly employees to work more hours than they were paid for under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"), as well a breach of contract claim under the

2

Pennsylvania Wage Payment and Collection Law ("WPCL"). ECF No. 1.[1] On October 16, 2020, through an amended complaint, the class and collective claims were expanded to include similarly situated employees in New Jersey, Maryland, and Virginia. ECF No. 47. After the parties stipulated to conditional certification of an FLSA collective encompassing "[a]ll hourly paid workers employed by IHOP within the Harvest Hospitalities franchise at any time from October 23, 2017, to the present," more than 290 employees opted into the lawsuit. *See* ECF Nos. 56, 59, & 78.

After engaging in some opt-in discovery, Ms. Duke moved to narrow the *Duke* action to assert claims only on behalf of herself and the hourly employees working in Western Pennsylvania, which this Court granted. ECF Nos. 105, 106, 107 & 107-1. Following the completion of discovery on January 18, 2022 and a post-discovery status conference with the parties in the *Duke* action, at the parties' request, the Court referred the parties to a judicial settlement conference, over which U.S. District Judge W. Scott Hardy presided. ECF Nos. 121, 124 & 125.

The parties' settlement conference with Judge Hardy included not only the claims in the *Duke* action but also those claims asserted by former *Duke* opt-in plaintiffs in three actions that were commenced in the U.S. District Court for the Eastern District of Pennsylvania, the U.S. District Court for the District of New Jersey, and the U.S. District Court for the District of Maryland after the *Duke* action had been narrowed to cover only hourly employees in Western Pennsylvania.[2] ECF No. 145 at 2.

---

[1] Unless otherwise noted, the ECF numbers refer to those in *Taylor Duke* v. *Harvest Hospitalities, Inc., Sattar Shaik*, Civil Action: 2:20-CV-00865-CCW.
[2] *Wilson et al. v. Harvest Hospitalities, Inc., et al.*, 2:21-cv-04274-TJS (E.D. Pa.); *Royal et al. v. Harvest Hospitalities, Inc., et al.*, 3:21-cv-17737-FLW-LHG (D.N.J.); *Morales et al. v. Harvest Hospitalities, Inc., et al.*, 1:21-cv-02482-JKB (D.Md.).

The parties, including representative plaintiffs from each of the four actions, participated in a judicial settlement conference on April 7, 2022, before Judge Hardy. ECF Nos. 129 & 133. Although the parties did not reach a resolution during the judicial settlement conference, the parties ultimately reached a settlement agreement after further discussions. ECF No. 133; ECF No. 145 at 2. The three additional cases were transferred to the Western District of Pennsylvania after the parties reached a settlement in principle and were consolidated with the *Duke* case[3]. ECF No. 140. The parties finalized a settlement agreement (the "Settlement Agreement") on June 28, 2022, and Plaintiffs now seek Court approval of that settlement. ECF No. 144.

## II.     Standard of Review

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled…only with the court's approval." Fed. R. Civ. P. 23(e). Furthermore, where the settlement would bind class members, "the court may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Accordingly, "when a district court is presented with a class settlement agreement, the court must first determine that 'the requirements for class certification under Rule 23(a) and (b) are met, and must separately "determine that the settlement is fair to the class under [Rule] 23(e).""'" *In re NFL Players Concussion Injury Litig.* ("*NFL II*"), 775 F.3d 570, 581 (3d Cir. 2014) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011)).

Courts in the Third Circuit generally follow a two-step process for approval of class settlements. First, "the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'" *In re NFL Players' Concussion Injury Litig.* ("*NFL I*"), 961 F.

---

[3] *Wilson et al. v. Harvest Hospitalities, Inc., et al.*, Civil Action No. 2:22-cv-00744, *Royal et al. v. Harvest Hospitalities, Inc., et al.*, Civil Action No. 2:22- cv-00753, and *Morales et al. v. Harvest Hospitalities, Inc., et al.*, Civil Action No. 2:22-cv-00772

Supp. 2d 708, 713–14 (E.D. Pa. 2014) (quoting *Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("*MCL*")).  At the preliminary approval stage,

> [T]he bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

*NFL I*, 961 F.Supp.2d at 714.  According to the United States Court of Appeals for the Third Circuit, there is "an initial presumption of fairness when the court finds that (1) the negotiations occurred at arm's length;  (2) there was sufficient discovery;  (3) the proponents of the settlement are experienced in similar litigation;  and (4) only a small fraction of the class objected." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).[4]

Even though there is a "strong presumption" in favor of class settlements, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595–96 (3d Cir. 2010), "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement." *NFL I*, 961 F.Supp.2d at 714 (citation omitted). As such, "[j]udicial review must be exacting and thorough," *id.* (quoting *MCL* § 21.61), such that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-3905 (RMB/JS), 2011 U.S. Dist. LEXIS 2161, at *7 (D.N.J. Jan. 10, 2011) (citation omitted); *see also*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("In cases such as this, where settlement

---

[4] At the final approval stage, a more demanding test applies, requiring the Court to examine the so-called *Girsh* factors: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.
*In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

negotiations precede class certification, and approval for settlement and certification are sought simultaneously, we require district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement.").

If approval of the proposed class settlement is sought contemporaneously with certification of the class—that is, when the parties agree to a class-wide settlement "before the district court has issued a certification order under Rule 23(c)"—"'the certification hearing and preliminary fairness evaluation can usually be combined.'" *NFL II*, 775 F.3d at 582 (quoting *MCL* § 21.632). When doing so,

> The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).… If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* (quoting *MCL* § 21.632) (internal citation omitted). Thus, a district court may preliminarily certify a class under Rule 23(e) to facilitate notice to absent class members, fairly and efficiently resolve litigation, and preserve the resources of the court and the litigants, "allow[ing] the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims." *Id.* at 583.

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," if such notice is justified by a showing that the Court will "will likely be able to: (i) approve the proposal under Rule 23(e)(2)[5]; and (ii) certify

---

[5] Under Rule 23(e)(2), a Court may approve a settlement proposal that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-

the class for purposes of judgment on the proposal." Rule 23(e)(1)(B) does not "displace any factor, but rather [] focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee Note. Thus, the Court considers the factors—many of which overlap with factors from the Third Circuit—as appropriate in conjunction with the Third Circuit precedent above.

Finally, with respect to the FLSA claims at issue in this case, Plaintiffs appear not to seek approval of the proposed settlement of an FLSA collective action at this time. ECF No. 145 at 9 n.2 ("[I]n settling 'hybrid' PMWA/FLSA cases, class and collective counsel within the Third Circuit generally brief the fairness of the resolution of the FLSA claim at the 'final approval' stage of the Rule 23 approval process. Federal district courts in Pennsylvania have endorsed such approach."); *id.* (citing *Del Valle v. Empire Home Health Care*, 2021 WL 5534703, 2021 U.S. Dist. LEXIS 153355, *1 n. 1 (E.D. Pa. Aug. 3, 2021) (observing that plaintiff "will request judgment on the FLSA collective action together with final approval of the PMWA class action"); *Tumpa* [*v. IOC-PA, LLC*], 2021 U.S. Dist. LEXIS 2806, at *11–15(W.D. Pa. Jan. 7, 2021) (performing FLSA fairness analysis at the final approval stage)). Thus, the Court will not, at this time, decide "that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *In re Chickie's & Pete's Wage & Hour Litig.*, Civil Action No. 12-6820, 2014 U.S. Dist. LEXIS 30366, at *6 (E.D. Pa. Mar. 7, 2014) (quoting *Cuttic v. Crozer-*

---

member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

*Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012)). The Court will include a briefing schedule on this topic in the accompanying order.

**III.    Analysis**

    **A.    The Court Will Preliminarily Approve the Proposed Settlement**

Applying the *GMC* factors, the proposed settlement here was reached as a continuation of a judicial settlement conference with Judge Hardy as a third-party neutral; thus, it appears to have been the product of arm's length negotiations. ECF No. 145 at 2, 11; *see also*, Fed. R. Civ. P. 23(e)(2)(B)("the proposal was negotiated at arm's length"). Next, the proposed settlement was reached after the *Duke* parties finished fact and expert discovery on the merits. ECF No. 145 at 1–2, 10–11 (detailing discovery efforts). And, as to the consolidated cases, although formal discovery had yet to commence at the time of their transfer to this district, a significant amount of discovery related to the claims in the consolidated cases had already been conducted in the year's worth of litigation in *Duke* prior to the Court granting Ms. Duke's motion to narrow her complaint. Thus, the parties to the consolidated cases had sufficient information to evaluate the claims and defenses at play in those actions, notwithstanding the specific procedural posture of the consolidated cases at the time of transfer. Third, the parties are represented by competent counsel experienced in complex litigation. ECF No. 145-1; ECF No. 145-2; ECF No. 145-3. Fourth, because a class has not yet been certified, the fourth *GMC* factor—the fraction of class members objecting to the settlement—cannot be evaluated at this point. On balance, the *GMC* factors weigh in favor of preliminary approval, such that an initial presumption of fairness attaches.

Next, the Court considers and finds that "there are no obvious deficiencies and the settlement falls within the range of reason." *Zimmerman*, 2011 U.S. Dist. LEXIS 2161 at *7. The settlement amount of $965,000.00 includes enhancement payments totaling $30,000 for Named

Plaintiffs, as well as a maximum of $260,000 for attorneys' fees[6] and $76,000 for litigation costs incurred, and a maximum cost of $44,765.00 for the Settlement Administrator. Thus, the amount available for payment to the Settlement Class Members is $554,235, to be allocated based on weeks worked,[7] ECF No. 145 at 6 (citing Settlement Agreement ¶ 3.1); *see also*, Fed. R. Civ. P. 23(e)(2)(D) ("the proposal treats class members equitably relative to each other"). The Court finds that for purposes of preliminary approval, the proposed settlement appears to be "fair, reasonable and adequate" for the following reasons.

First, "Plaintiffs' counsel have estimated Defendants' outer exposure in the four cases to be $1,929,586 (unliquidated) for the various theories of liability asserted across the four actions, with favorable assumptions to the class," meaning that the $965,000 settlement amount "represents 50.01% of the total liability for unpaid wages in this action, assuming that Plaintiffs succeed on all theories of liability." ECF No. 145 at 13. Further, Plaintiffs note that this percentage assumes "substantial off-the-clock damages," and if "Defendants' exposure were limited only to the measurable time reductions reflected in Defendants' time records…, the total damages exposure across all four cases is only $388,023.55 (unliquidated)." *Id.*; *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) ("the costs, risks, and delay of trial and appeal").

Finally, the Plaintiffs note the primary factor that has motivated the settlement agreement: "the risk that a class-action judgment would push Defendants' into bankruptcy, leaving the class members behind Defendants' numerous secured creditors and potentially recovering nothing from such a bankruptcy." ECF No. 145 at 12; *see also id.* at 2 ("The Parties reached the settlement

---

[6] The $260,000 in fees represents around 26.9% of the $ 965,000 settlement fund, which at this preliminary stage, appears to fall below similar cases cited by Plaintiffs. ECF No. 145 at 14; *see also* Fed. R. Civ. P. 23(e)(2)(C)(iii) ("the terms of any proposed award of attorney's fees, including timing of payment").

[7] Further, it appears that the "proposed method of distributing relief to the class, including the method of processing class-member claims," Fed. R. Civ. P. 23(e)(2)(C)(ii) is likely to be effective, because the Rule 23 Class Members have been identified based on employment records and the one-page claim form can be returned by mail, email, or completed online. *See* ECF No. 145 at 14.

agreement only after Defendants provided substantial confidential financial information that showed a level of financial distress that significantly increased the anticipated risks for Plaintiffs to continue litigation against the Defendants."); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) ("the costs, risks, and delay of trial and appeal").

The parties' proposed release of claims does merit some additional discussion. The release, *see* ECF No. 144-7 at 5, would bind settlement class members who do not affirmatively opt-out of the settlement to the release of FLSA claims that they have not opted-in to in the first place,[8] *see Knight v. Pub. P'ships, LLC,* No. 19-2461, 2020 U.S. Dist. LEXIS 118596, at *7 (E.D. Pa. July 7, 2020) ("Notably, in a Rule 23 class action, a prospective party plaintiff is automatically included in the class unless he 'opt[s]-out of the class upon notice of the action.' However, 'prospective class members in a FLSA collective action must affirmatively opt-in to be bound by any judgment.'") (citations omitted); *see* ECF Nos. 144-8–144-11 (identifying which proposed class members have opted-in to the FLSA component). Although the United States Court of Appeals for the Third Circuit has not yet spoken on this issue, there appears to be support from other Courts of Appeals for the proposition that opt-in FLSA claims may properly be released through an opt-out class settlement. *See Richardson v. Wells Fargo Bank, N.A.,* 839 F.3d 442 (5th Cir. 2016); *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106 (9th Cir. 2018); *see also Simmons v. Trans Express Inc.*, No. 19-438, 2021 U.S. App. LEXIS 32032 (2d Cir. Oct. 26, 2021). Prior statements from the Third Circuit on the preclusive effect of judgments in class action cases (which include court-approved settlements) suggest that it would concur with the Fifth and Ninth Circuits

---

[8] ECF No. 144-7 at 5–6 (defining "Released Claims" as "any and all claims, demands, and causes of action of any kind that arose at any time through and including January 17, 2021, and that: (a) were asserted in the Civil Actions; (b) relate to the alleged failure to pay for all hours worked; (c) could have been asserted in the Civil Actions based on the facts alleged; (d) arise under any federal, state or local law governing the payment of (or derived from the alleged failure to pay) regular or overtime wages; and/or (e) are derived from any of the foregoing, including claims for penalties, liquidated damages, interest, attorneys' fees, costs, or expenses.").

in determining that, in certain circumstances, FLSA claims may be released through an opt-out class settlement. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 261 F.3d 355, 366 (3d Cir. 2001) ("It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."). Here, the Court concludes that the parties' release is acceptable, particularly because the proposed notice appears to fully inform settlement class members of what they must do to opt-out of the settlement. *See* ECF No. 144-7 at 5–6. However, because of the possible friction between the FLSA's opt-in and Rule 23's opt-out procedures as they relate to the proposed settlement here, the Court will provide the parties with an opportunity to confer and submit an amended proposed settlement and/or notice form for approval, if they believe some revision to the proposed settlement agreement and/or supplemental notice is necessary or appropriate. *See Caddick v. Tasty Baking Co.,* No. 2:19-cv-02106-JDW, 2021 U.S. Dist. LEXIS 206991, at *6–7 (E.D. Pa. Oct. 27, 2021) (noting court's approval of supplemental notice to opt-in FLSA settlement plaintiffs where there were differences in release provisions between FLSA and class participants).

For the reasons discussed above, because "there are no obvious deficiencies and the settlement falls within the range of reason," *Zimmerman*, 2011 U.S. Dist. LEXIS 2161 at *7, Plaintiff's Motion for Preliminary Approval will be granted.

    **B.**    **The Court Will Provisionally Certify the Rule 23 Classes**

For purposes of the proposed settlement, the parties define the following four classes:

a. Pennsylvania Rule 23 Class:

> All individuals who, at any time between June 12, 2017, and January 17, 2021, were employed by Defendants as hourly employees in the Commonwealth of Pennsylvania.

b. New Jersey Rule 23 Class:

>All individuals who, at any time between September 28, 2015, and January 17, 2021, were employed by Defendants as hourly employees in the State of New Jersey.
>
>c. Maryland Rule 23 Class:
>
>All individuals who, at any time between September 28, 2018, and January 17, 2021, were employed by Defendants as hourly employees in the State of Maryland.
>
>d. Virginia Rule 23 Class:
>
>All individuals who, at any time between September 28, 2018, and January 17, 2021, were employed by Defendants as hourly employees in the Commonwealth of Virginia.

ECF No. 144-1 at 1.9–1.11 (together, the "Rule 23 Classes").

The Rule 23 Classes include more than 3,500 individuals and therefore, Rule 23(a)'s numerosity requirement appears to be satisfied. *Id.* at 17–18 (citing *Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 490 & n.21 (E.D. Pa. 2018); *see also, Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (generally accepted that class of 40 or more is sufficient to meet numerosity requirement)). In addition, the Court concludes for purposes of preliminary certification that each of the Rule 23 Classes is ascertainable, given that each potential class member is identifiable through records kept by the Defendants. ECF No. 144-1 at 1.9–1.11 (listing individuals in Schedule A, B, C, and D, and mechanism for identifying unlisted individuals); *see Byrd v. Aaron's Inc.*, 784 F.3d 154, 162–63 (3d Cir. 2015) (ascertainability requirement met if "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'") (citation omitted).

Next, the typicality requirement appears to be satisfied because "the Named Plaintiffs and the Class Members pursue the same claims under their respective state laws and share the same interest of recovering unpaid wages based on Defendants' alleged failure to pay the amounts to which the employees were legally entitled for all hours worked by each employee." ECF No. 145

at 21; *see also In re NFL Players Concussion Injury Litig.,* 821 F.3d 410, 427–28 (3d Cir. 2016) (the typicality requirement "ensures the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals.") (cleaned up).

The Court further concludes, for purposes of preliminary class certification, that the Named Plaintiffs and their counsel will adequately represent the class. *See In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012) ("According to the Third Circuit, Rule 23(a)(4) adequacy is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interests.") (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d. Cir. 2007)). Indeed, as Plaintiffs note, Proposed Class Counsel "is skilled and experienced in wage and hour class action litigation" and "their litigation efforts have persuaded the Defendants to enter into the Settlement Agreement, which provides a substantial recovery for the proposed Rule 23 Settlement Class." ECF No. 145 at 19–20; ECF No. 145-1; ECF No. 145-2; ECF No. 145-3. The Named Plaintiffs are also adequate, "as they have dutifully pursued the Civil Actions for themselves and the other class members, including by providing substantial evidence and information to support the class claims, and the Named Plaintiffs do not have any interests that are antagonistic to the class." ECF No. 145 at 19–20. *See also*, Fed. R. Civ. P. 23(e)(2)(A)("the class representatives and class counsel have adequately represented the class").

Next, because Plaintiffs seek preliminary certification of the Rule 23 Classes pursuant to Rule 23(b)(3), the Court will consider Rule 23(a)'s commonality and Rule 23(b)(3)'s predominance requirements together. *See Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) ("'[W]here an action is to proceed under Rule 23(b)(3), the commonality requirement

is subsumed by the predominance requirement.'") (citation omitted). And, "the predominance requirement is met only if the district court is convinced that 'the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127–28 (3d Cir. 2018) (internal citation and quotation omitted). Here, that requirement is met because all members of the Rule 23 Classes were hourly employees and non-exempt under the FLSA and state law equivalents who are pursuing "unpaid wages to which they are legally entitled is substantially based on a common evidentiary record, including (i) the evidence of time manager adjustments preserved through the Delaget backup system, (ii) the centralized management at stores, as evidenced through WhatsApp group messages and email records, (iii) testimony from Defendants' managers, (iv) representative testimony where Defendants' recordkeeping left an evidentiary gap." ECF No.145 at 20–21.

Finally, Rule 23(b)(3)'s superiority requirement "'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004) (quoting *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 316 (3d Cir. 1998)). The Court finds that superiority is met here because, as Plaintiffs point out "[l]ike many wage and hour lawsuits, the per-person damages for the class members are relatively low compared to the expense of pursuing their claims individually." ECF No. 21–22 (applying Rule 23(b)(3)(A)–(C) superiority factors).

And, given the posture of this case—i.e. proposed settlement—the Court also finds that there are not likely to be "difficulties in managing" the action. Fed. R. Civ. P. 23(b)(3)(D); *see also Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997) (noting that "[c]onfronted with a

request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

Accordingly, the Court concludes that the proposed settlement Rule 23 Classes meet the criteria set forth in Rule 23(a) and Rule 23(b)(3).

### C. The Parties' Proposed Notice Satisfies Rule 23(e)

Finally, the Court considers the parties' plan for the dissemination of notice and claim form. Federal Rule of Civil Procedure 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Such notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

The Court has reviewed (1) the proposed notice forms (mail, email, and text), ECF Nos. 144-3, 144-4, 144-7; (2) the proposed claim form, ECF No. 114-2; (3) the proposed plan, including (a) the appointment of Rust Consulting, Inc., as third-party settlement administrator; (b) the direct mailing of the class members and notice by email and text where email addresses and phone numbers can be provided; (c) the method of maintaining and updating class members' addresses as described in the Agreement; and (d) the timeline for disseminating notice, for filing applications for attorneys' fees and costs, for filing the incentive award application, and for filing of objections. Upon this review, the Court finds each of these proposals to be reasonable and appropriate under the applicable Rule 23(e) standard.

As a consequence, the Court grants the parties' request and approves their proposed notices, claim form, and notice plan generally.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement as further set forth in the accompanying order.

DATED this 11th day of August, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record